Fifth case this morning, United States v. Stevenson Morning, Your Honor. Jerry Bischoff for the appellant. Bishop. And Mr. Alexis. All right, Mr. Bischoff, you may proceed. May it please the court, my name is Jerry Bischoff. I represent the appellant in this case. What we're doing here, Your Honor, is we're challenging one of the predicate offenses upon which his 15-year sentence was based. He was sentenced as an armed career criminal. I think really the reason that we're here comes back to the Illinois Department of Correction records. They're not very helpful. We know, we can tell from those records that Mr. Stevenson was admitted into the IDOC in March of 1994 when he picked up a UW by a felon case, 94 CR 1805. The judge who sentenced him to three years in that case ordered that sentence to run concurrent with an attempt murder from 1989. You said concurrent, Mr. Bischoff, you meant consecutive? No, I'll talk about the consecutive sentences. We're talking about the two cases that he entered the IDOC at the time he was discharged. He entered in March of 1994 on a UUW and the attempt murder from 1989 and those were to run concurrently. He was subsequently discharged on March 15th of 1996. So the question is, was he discharged on just the UUW alone or was he discharged on both those cases, the UUW as well as the murder? And I'm gonna take a step backward in a minute, but just to lay some background, that's why we're here because we can't tell from the IDOC records whether he was discharged on the UUW alone or whether possibly discharged on more than one case. And again, that brings us back to the records, the restoration of rights letter that he would have received. We know from the records that they're triggered automatically when you are discharged out. We can tell from the offender tracking system and the document that the government relied on, the minimus and movement screen, that he was discharged out on March 15th 1996. The problem with those documents is they don't correlate to a particular crime. Doesn't say he discharged out on the UUW, doesn't say he discharged out on the attempt murder, doesn't say he discharged out on on both. And that's a problem with the OTS and the screen. The restoration rights letter is problematical because it doesn't identify which case he's receiving the letter on. And of course, as was discussed at length in Buckmeyer, we know that letter is a problem for a host of reasons. One is it doesn't inform the offender that although his principal civil rights have been restored, they can't own or possess a weapon. If you receive that letter, if it applies to the attempt murder in this case, then it can't be relied upon as a criminal act. Now, that's by way of background. So I want to just shift briefly to what happened here with Judge Tharp. And he admitted during sentencing that these documents are not very helpful, that they certainly are lacking in clarity, which is why he had to go through his own calculations to determine when that attempt murder sentence was complete in his mind. And what he did was he and one of the justices asked me about consecutive and that's key here because that attempt murder case that under 89 CR 8636 back in 1989 was ordered to run consecutive to a drug case in 89 CR 8932. It was in a 10 year sentence. The mistake that Judge Tharp sentences as concurrent instead of consecutive. And when he did the math and what he did was he considered the 226 days time considered serve that he received on that attempt murder. He moved backwards from when the sentence would have started. And then he calculated when the sentence for the attempt murder might have ended. He actually made a mistake because he instead of the 11 November 15th data on which he was actually sentenced. But that was only a few weeks. He concluded that when Mr Stevenson, I'm sorry, this is so confusing. There's a lot of math involved and it's hard to follow. So if you please feel, I hope you interrupt me with questions because he paroled out in April, April 17th of 1994. And you can see that in defendant exhibit C, which is appendix 99, which indicates that he paroled out on April 17th. Uh, excuse me, 1995. Excuse me. And again, the problem is you can't tell what case he paroled out on. But just start, Mr Bishop, I'll take you up on your imitation. Please do. The, uh, the point that you're making, um, you're not gonna like me to hear. You're not gonna like me saying it this way, but you can disagree with me. Okay. The point that you're making strikes me is absolutely correct. You can't tell. But that's exactly the problem that Mr Stevenson runs into here because he unfortunately bears the burden. So I think the only the only direction that he can approach this from is to try to prove that not only try to establish that Judge Tharp's construction of all this or attempt to reconstruct it is erroneous. It's it reflects clear errors and that his alternative, meaning Mr Stevenson's alternative, is the only sensible alternative construction. Unless he can get to that point, I don't see how he can carry his burden. And I say that recognizing how unfortunate this situation is that nobody can come up with an answer to a question that you would think we could answer. Well, I think we can answer, and I think that we have met our burden by a preponderance of the evidence. And this is I'm glad you asked that question and you did. It's gonna make it a little easier for me. I was trying to wind my way to that point. The judge, Judge Tharp's calculation was wrong, and he admitted in essence, he admitted that this was a consecutive sentence, not a concurrent sentence. So whatever calculation he arrived at is wrong. But here's what you can tell. You do have to go back and kind of recreate the sentence because the jail they don't maintain their master files. So you kind of have to figure out what would typically regularly happen. Maybe it's the presumption of regular regularity that we can apply here as well. What should have happened? His sentence for the attempt murder should not have started running until his sentence. His four year sentence for the drug case was complete. Mr Bishop, I don't know if you can hear me, but you're not coming through. Oh, no. Can you hear me now? Yes. Okay, I'm gonna speak a little. Maybe it's I'm too loud. I'm gonna speak a little slower. I've calculated that the four year sentence that he was serving on his drug case under 89 CR 89